IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

TRAMMELL CROW RESIDENTIAL          §
COMPANY,                           §
                                   §
                  Plaintiff,       §
                                   §  Civil Action No. 3:08-CV-0501-D
VS.                                §
                                   §
VIRGINIA SURETY COMPANY, INC.,     §
                                   §
                  Defendant.       §

MEMORANDUM OPINION
AND ORDER

In this insurance coverage dispute, the principal question
presented by the parties' cross-motions for summary judgment is
whether the insurer——defendant Virginia Surety Company, Inc.
("Virginia Surety")——has a duty to defend the insured——plaintiff
Trammell Crow Residential Company ("Trammell Crow")——in a lawsuit
alleging that Trammell Crow discriminated against persons with
disabilities.  Because Trammell Crow has established beyond
peradventure that Virginia Surety has a duty to defend as a matter
of law, the court grants Trammell Crow's motion for partial summary
judgment and denies Virginia Surety's summary judgment motion.

I

This litigation arises from an underlying lawsuit brought by
The Equal Rights Center ("ERC"), a non-profit organization, against
Trammell Crow in the United States District Court for the District
of Columbia.  *See Equal Rights Ctr. v. Trammell Crow Residential
Co.*, No. 1:07-CV-01231-PLF (D.D.C. filed July 9, 2007) ("the *ERC*

*Litigation*").  ERC alleges that Trammell Crow is liable for discriminating against persons with disabilities, in violation of the Fair Housing Act ("FHA")[1] and the Americans with Disabilities Act of 1990 ("ADA").[2]  Trammell Crow, in turn, sues Virginia Surety for breach of contract, contending that it has failed to satisfy its duty under a commercial general liability insurance policy (the "Policy") to defend Trammell Crow in the *ERC Litigation*.  Trammell Crow also seeks a declaratory judgment that Virginia Surety has a continuing duty to defend.  And it alleges that Virginia Surety has violated Chapter 542 of the Texas Insurance Code——known as the Prompt Payment of Claims Act——by failing to promptly provide a defense, and that in denying coverage of the lawsuit, Virginia Surety violated Chapter 541 of the Texas Insurance Code, which prohibits unfair settlement practices.

The complaint in the *ERC Litigation* alleges that, between 1995 and 2006, Trammell Crow

> has engaged in a continuous pattern and practice of discrimination against persons with disabilities in violation of both the FHA and the ADA by designing, constructing, controlling, managing, and/or owning covered multifamily dwellings . . . in such a manner

---

[1]"FHA" refers collectively to Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. §§ 3601-3619, and the Fair Housing Regulations, 24 C.F.R. pts. 100-25.

[2]"ADA" refers collectively to the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.*, and the regulations implementing Title III of the ADA, 28 C.F.R. pt. 36.

> as to deny persons with disabilities access
> to, and the use of, these facilities as
> required under these federal civil rights
> laws.

P. July 28, 2008 App. 73.[3]  ERC also avers that Trammell Crow's discriminatory conduct injured the ERC and its members, most of whom are persons with disabilities.  ERC seeks, *inter alia*, "such damages as would fully compensate the ERC for the injuries incurred as a result of Trammell Crow's discriminatory housing practices and conduct."  *Id.* at 94.

The Policy, which covers the period February 15, 2002 to February 15, 2003, contains a "Personal and Advertising Injury Liability Coverage Amendment Endorsement."  The endorsement provides that Virginia Surety has a duty to defend Trammell Crow against any suit seeking damages for a covered "personal injury." A personal injury is covered if it arises out of an offense committed in the coverage territory and during the policy period. *See id.* at 55.  "Personal injury" explicitly includes injury arising out of discrimination because of physical disability.  *Id.* at 57 ("'Personal injury' means injury . . . arising out of . . . Discrimination because of race, religion, age, sex or physical disability, but only if such discrimination is not directly or indirectly related to the employment, prospective employment or

---

[3]Because the parties have filed appendixes in support of both motions, the court for clarity will refer to the appendix by the date filed.

termination of employment of any person or persons by any insured.").

Trammell Crow notified Virginia Surety of the *ERC Litigation* on November 13, 2007. By December 26, 2007 letter, Virginia Surety responded, denying that it has a duty to defend. It asserted that ERC's complaint did not allege facts that brought the lawsuit within the scope of policy coverage.

Trammell Crow contends that Virginia Surety has a duty to defend it in the *ERC Litigation* under the Policy's coverage for "personal injury." It seeks partial summary judgment establishing that Virginia Surety breached the Policy by failing to defend it and declaring that Virginia Surety has an ongoing duty to defend it in the *ERC Litigation*.[4] Virginia Surety denies that it has a duty to defend Trammell Crow in the *ERC Litigation*, and it seeks final summary judgment declaring that it has no such duty and dismissing all of Trammell Crow's claims. Because the parties' motions for

---

[4]In Trammell Crow's motion for partial summary judgment, it seeks determinations of the following issues: (1) Virginia Surety's liability for breach of contract based on the failure to defend Trammell Crow; (2) Virginia Surety's liability for violating Chapter 542 of the Texas Insurance Code; and (3) Virginia Surety's liability for attorney's fees and prejudgment interest. Trammell Crow reserves the right to seek a factual determination of——i.e., it does not move for summary judgment regarding——(1) the amount of its damages caused by Virginia Surety's breach of contract; (2) the amount of damages it is owed due to Virginia Surety's violation of Chapter 542 of the Texas Insurance Code; (3) the amount of attorney's fees and prejudgment interest to which it is entitled; and (4) Virginia Surety's liability and the amount of Trammell Crow's damages under Chapter 541 of the Texas Insurance Code.

summary judgment address the same issues, the court will consider them together.

II

In Texas, "[t]he duty to defend arises when a third party sues the insured on allegations that, if taken as true, potentially state a cause of action within the terms of the policy." *St. Paul Guardian Ins. Co. v. Centrum GS Ltd.*, 283 F.3d 709, 713 (5th Cir. 2002) (citation and internal quotation marks omitted). Texas follows the "eight-corners" rule, under which the court looks only to the third-party plaintiff's pleadings and the provisions of the insurance policy in determining whether an insurer has a duty to defend. *See GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 308 (Tex. 2006). Neither facts outside the pleadings nor the truth or falsity of the allegations should be considered, and the allegations against the insured should be "liberally construed in favor of coverage." *Id.* Under the "eight-corners" rule,

> [i]f the four corners of a petition allege facts stating a cause of action which potentially falls within the four corners of the policy's scope of coverage, the insurer has a duty to defend. If all the facts alleged in the underlying petition fall outside the scope of coverage, then there is no duty to defend, but we resolve all doubts regarding duty to defend in favor of the duty.

*Liberty Mut. Ins. Co. v. Graham*, 473 F.3d 596, 600 (5th Cir. 2006). "If an insurer has a duty to defend any portion of a suit, the

insurer must defend the entire suit." *St. Paul Fire & Marine Ins. Co. v. Green Tree Fin. Corp.-Tex.*, 249 F.3d 389, 395 (5th Cir. 2001).

The insured has the burden of showing that a claim is potentially within the scope of policy coverage. *See Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 528 (5th Cir. 2004) (citing Tex Ins. Code Ann. art. 21.58(b) (Vernon Supp. 1997)). The insurer, however, bears the burden of establishing that "the plain language of a policy exclusion or limitation allows the insurer to avoid coverage of *all* claims, also within the confines of the eight corners rule." *Id.*

The parties' summary judgment burdens depend on whether they are addressing a claim or defense for which they will have the burden of proof at trial. To be entitled to summary judgment on a matter for which it will have the burden of proof, a party "must establish 'beyond peradventure all of the essential elements of the claim or defense.'" *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F.Supp. 943, 962 (N.D. Tex. 1995) (Fitzwater, J.) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)). When the summary judgment movant will not have the burden of proof at trial, it need only point the court to the absence of evidence of any essential element of the opposing party's claim or defense. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once it does so, the nonmovant must go beyond its pleadings and designate

specific facts demonstrating that there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for plaintiffs. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmovant's failure to produce proof as to any essential element renders all other facts immaterial. *Trugreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.). Summary judgment is mandatory where the nonmoving party fails to meet this burden. *Little*, 37 F.3d at 1076.

## III

Trammell Crow asserts that ERC——the plaintiff in the *ERC Litigation*——states a claim that clearly falls within the Policy's personal injury coverage. Virginia Surety counters that ERC's claims are not even potentially covered. Virginia Surety's denial of coverage rests primarily on four separate arguments: (1) the *ERC Litigation* does not allege facts that constitute a "personal injury" under the Policy; (2) the alleged discrimination was not committed during the Policy period; (3) the "willful violation of ordinance" exclusion precludes coverage; and (4) the fortuity doctrine bars coverage.

### A

Virginia Surety contends that ERC's complaint does not allege a covered "personal injury." Under an endorsement to the Policy,

Virginia Surety has the duty to defend Trammell Crow against any suit seeking damages because of a covered "personal injury." The endorsement provides that "'[p]ersonal injury' means injury, other than 'bodily injury,' arising out of one or more of the following *offenses committed in the course of your business*." P. July 28, 2008 App. 57. One of the enumerated "offenses" is discrimination because of "physical disability." *Id.* Virginia Surety argues that ERC's complaint fails for several reasons to allege such a personal injury.

First, Virginia Surety argues that ERC's complaint does not allege that Trammell Crow committed an "offense." It contends that ERC only alleges that Trammell Crow frustrated the organization's purpose, which is not an enumerated offense. ERC's complaint, however, clearly alleges that Trammell Crow committed an enumerated "offense." Specifically, ERC alleges that Trammell Crow discriminated because of physical disability. *See, e.g.*, *id.* at 92 ("Through its design, construction, control, management, and/or ownership of the Subject Properties, Trammell Crow has: (a) discriminated against individuals with disabilities . . . ."). The entire complaint rests on allegations of discrimination, and it cites specific ways in which Trammell Crow allegedly discriminated against persons with disabilities.[5]

_____

[5]For example, ERC's complaint alleges that Trammell Crow has discriminated against persons with physical disabilities "because their rental and leasing offices, and the appurtenant parking,

- 8 -

Second, Virginia Surety contends that ERC's complaint does not allege a "personal injury" arising out of the offense of discrimination, because ERC does not allege that *ERC* suffered a personal injury. Virginia Surety argues that ERC does not allege that it suffered a personal injury, but instead relies only on allegations of injury to its public members.[6] Trammell Crow contends that ERC's complaint does not rely on injuries suffered by others, but that ERC alleges that it personally suffered injury arising out of Trammell Crow's discriminatory acts.

The court agrees with Trammell Crow's interpretation of the complaint. ERC's complaint is not based on injuries to others. It alleges that it was personally injured. *See id.* at 88 (alleging that ERC has been "directly and substantially injured" and that it has suffered a "concrete and demonstrable injury"). Specifically, the complaint alleges that, due to Trammell Crow's discrimination,

_____

sidewalks and restrooms at those offices, are designed and constructed in such a manner that the facilities are not readily accessible to, and usable by, individual[s] with disabilities." P. July 28, 2008 App. 92.

[6]Virginia Surety discusses at length two cases that it contends stand for the proposition that the party suffering the alleged "personal injury" must be the party bringing the claim to invoke an insurer's duty to defend under personal injury coverage. *See BASF, AG v. Great Am. Assurance Co.*, 522 F.3d 813, 820-21 (7th Cir. 2008); *Great Am. Ins. Co. v. Riso, Inc.*, 479 F.3d 158 (1st Cir. 2007). Trammell Crow argues that these cases do not advance this proposition. Because the court concludes that ERC does allege that it suffered the "personal injury," the proposition advocated by Virginia Surety does not affect this case, and the court need not discuss whether these cases advance the proposition.

ERC "has been frustrated in the pursuit of its overall mission of identifying, challenging, and eliminating discrimination in housing" and has been forced "to divert scarce resources to a lengthy investigation aimed at identifying and counteracting Trammell Crow's discriminatory practices." *Id.* These are alleged injuries that ERC personally suffered, and they arise out of Trammell Crow's alleged discrimination because of physical disability.

In its discussion of whether ERC has alleged a "personal injury," Virginia Surety also appears to argue that ERC cannot allege a "personal injury" because it was not personally discriminated against due to a physical disability.[7] The Policy does not require, however, that a plaintiff personally suffer physical disability discrimination. The Policy provides a contractual duty to defend when Trammell Crow is sued by a plaintiff seeking "personal injury" damages. *See id.* at 55. "Personal injury" damages are those arising out of an enumerated "offense," *id.*, committed in the course of Trammell Crow's

---

[7]Virginia Surety again cites *BASF* and *Riso* for this proposition, but, as Trammell Crow points out, these cases do not support this point. Both *BASF* and *Riso* held that the plaintiffs in the underlying lawsuits did not sufficiently allege the "offense" upon which they were attempting to rely. *See BASF*, 522 F.3d at 820; *Riso*, 479 F.3d at 161. In both of the cases, the underlying complaint alleged antitrust violations, and the insured was attempting to invoke a duty to defend based on allegations of the "offense" of commercial disparagement. *See id.* In the instant case, ERC's complaint explicitly alleges the applicable "offense," discrimination based on physical disability.

business, *id.* at 57. The term "offense" includes discrimination because of physical disability (excluding employment-based claims). *Id.* Therefore, provided that the plaintiff in the *ERC Litigation* is seeking damages for "personal injury," i.e., damages arising out of discrimination because of physical disability, Virginia Surety has a duty to defend Trammell Crow, even if the plaintiff did not itself suffer such discrimination.

Virginia Surety also argues that ERC's complaint does not make out a prima facie case of discrimination under either the FHA or the ADA. What controls, however, is whether ERC is seeking "personal injury" damages, that is, damages arising out the "offense" of discrimination because of physical disability. Because ERC's complaint does so, it is immaterial whether the complaint satisfies the prima facie case requirements of the FHA or the ADA.

Accordingly, the court holds that ERC is seeking damages because of a covered "personal injury."

B

Virginia Surety argues that even if ERC's complaint alleges a "personal injury" under the Policy, the alleged injury did not occur during the policy period. It contends that, under Texas law, an insurer's duty to defend is triggered by an "injury in fact" that occurs during the policy period. Virginia Surety cites a recent Texas Supreme Court decision, *Don's Building Supply, Inc. v.*

*OneBeacon Insurance Co.*, ___ S.W.3d ___, 2008 WL 3991187 (Tex. Aug. 29, 2008), for this proposition. *Don's Building Supply* adopts the "injury in fact" approach and states that "the key date is when injury happens, not when someone happens upon it." *Id.* at *1. Virginia Surety argues that, under the "injury in fact" approach, the only possible dates when ERC could have suffered such an injury are when allegedly discriminatory construction was completed or when ERC tested and discovered the allegedly discriminatory construction.[8] Virginia Surety maintains that ERC's complaint does not allege that any of these dates fell within the policy period. Trammell Crow contends that this argument pertains to an irrelevant question and that *Don's Building Supply* is inapposite.

The Policy covers a "personal injury" that "arises out of an offense committed during the policy period." P. July 28, 2008 App. 55. It is *the offense* that must be committed during the policy period, not the personal injury. Therefore, the question whether an "injury in fact" is required, or when an injury is deemed to

---

[8]It is unclear how Virginia Surety arrived at this conclusion. The date when ERC discovered the discriminatory construction would be irrelevant under the "injury in fact" approach that Virginia Surety advocates. *See Don's Bldg. Supply*, 2008 WL 3991187, at *3 ("The date that the physical damage is or could have been discovered is irrelevant under the policy."). Also, ERC's complaint alleges more than discriminatory construction. It alleges that Trammell Crow discriminated through "design, construction, control, management and/or ownership" of numerous properties. P. July 28, 2008 App. 71. Because the court concludes that the "injury in fact" approach does not apply to the present case, however, the court need not discuss what dates ERC actually could have suffered an injury in fact.

have "occurred," is not controlling.  Because these are the issues addressed in *Don's Building Supply*, that case is inapposite.[9] Instead, what is determinative is whether an offense of discrimination because of physical disability was allegedly committed during the policy period.  Therefore, to trigger Virginia Surety's duty to defend, ERC's complaint must allege that Trammell Crow discriminated because of physical discrimination during the policy period, i.e., between February 15, 2002 and February 15, 2003.  ERC's complaint does assert that Trammell Crow discriminated because of physical disability during this period.

In arguing that ERC's complaint does not allege discrimination during the policy period, Virginia Surety contends that the complaint must allege that discrimination occurred at a "scheduled location" during the policy period.  The Policy includes a "Schedule of Locations" endorsement, which provides that it is "As

---

[9]The policy coverage at issue in *Don's Building Supply* is not the same as the coverage here, and the coverages have different triggers.  *Don's Building Supply* looked at coverage for "property damage," and the policy applied to "property damage" only if it "occurs during the policy period."  *Don's Bldg. Supply*, 2008 WL 3991187, at *2.  The coverage at issue in this case is for "personal injury," and the Policy applies to "personal injury" if it "arises out of an offense committed during the policy period." P. July 28, 2008 App. 55.  Moreover, the Texas Supreme Court stressed in *Don's Building Supply* that its approach is limited by the language of the specific insurance policy.  *Don's Bldg. Supply*, 2008 WL 3991187, at *5 ("Finally, we stress that we do not attempt to fashion a universally applicable 'rule' for determining when an insurer's duty to defend a claim is triggered under an insurance policy, as such determinations should be driven by the contract language——language that obviously may vary from policy to policy.").

Per Schedules on File." P. July 28, 2008 App. 22. Virginia Surety argues that this endorsement alters the coverage territory of the Policy's personal injury coverage to provide coverage for offenses occurring only at a property listed on the filed schedules, rather than offenses occurring anywhere in the United States.[10] Trammell Crow contends that the "Schedule of Locations" endorsement does not alter the coverage territory of the Policy's personal injury coverage. Because it does not affect the outcome of the court's decision, the court will assume *arguendo* that the "Schedule of Locations" endorsement alters the Policy's coverage territory and requires that an alleged offense occurred at a scheduled location.[11]

ERC alleges that, between 1995 and 2006, Trammell Crow discriminated because of physical disability through the "design, construction, control, management and/or ownership" of "Subject Properties."[12] The "Subject Properties" are 172 properties listed

---

[10]The "Worldwide Coverage Endorsement" provides that the Policy territory includes "[t]he United States of America, its territories or possessions or Puerto Rico." P. July 28, 2008 App. 54.

[11]The court also assumes *arguendo* that the properties listed in the "Binder of Insurance" that Virginia Surety has included in its appendix are the scheduled locations referenced in the "Schedule of Locations." *See* D. Aug. 14, 2008 App. 106-194. Accordingly, Virginia Surety's September 24, 2008 motion for leave to file supplemental evidence in support of its motion for final summary judgment, which seeks to establish this, is denied as moot.

[12]For example, in its claim for relief under the FHA, ERC alleges:

> Through its design, construction,
> control, management, and/or ownership of the

- 14 -

in Addendum A to ERC's complaint.  P. July 28, 2008 App. 96-101.
Of these properties, 26 are listed in the Policy's "Schedule of
Locations" and were owned by Trammell Crow at the inception of the
Policy.  Virginia Surety argues that the alleged discrimination at
the scheduled properties did not occur during the policy period
because no scheduled properties were constructed during the policy
period.  This argument misinterprets ERC's allegations.

ERC's complaint alleges not only that Trammell Crow has
discriminated through the construction of the Subject Properties,
but also through the design, control, management, and ownership of
these properties.  For example, ERC avers that, through these

_____

Subject Properties, TRAMMELL CROW has:

a.    discriminated in the rental or sale of,
      otherwise made unavailable, or denied
      dwellings to persons because of their
      disabilities in violation of the FHA, 42
      U.S.C. § 3604(f)(1);

b.    discriminated against persons because of
      their disabilities in the terms,
      conditions, or privileges of rental or
      sale of a dwelling, or in the provision
      of services or facilities in connection
      with the rental or sale of a dwelling, in
      violation of the FHA, 42 U.S.C. §
      3604(f)(2); and

c.    failed to design and construct dwellings
      in compliance with the requirements
      mandated by the FHA, 42 U.S.C. §
      3604(f)(3), and the applicable
      regulations.

P. July 28, 2008 App. 90.

actions, Trammell Crow "discriminated in the rental or sale of, otherwise made unavailable, or denied dwellings to persons because of their disabilities in violation of the FHA." *Id.* at 90. Therefore, at a minimum, ERC asserts that Trammell Crow discriminated because of physical disability through owning properties that are listed in the "Schedule of Locations" and that Trammell Crow owned during the policy period. ERC therefore seeks by its lawsuit damages for an alleged offense that falls within the Policy's "personal injury" coverage.

C

Virginia Surety maintains that because ERC alleges violations of the FHA and ADA that implicate intentional acts and willful conduct by Trammell Crow, the "willful violation of ordinance" exclusion precludes coverage, and it has no duty to defend.[13]

Under Texas law, "[t]he insurer bears the burden of establishing that one of the policy's limitations or exclusions constitutes an avoidance or affirmative defense to coverage." *State Farm Fire & Cas. Co. v. Blythe*, 2001 WL 1148111, at *3 (N.D. Tex. Sept. 18, 2001) (Fitzwater, J.) (citing Tex. Ins. Code Ann. art. 21.58(b) (Vernon 2001)), *aff'd*, 107 Fed. Appx. 442 (5th Cir.

_____

[13]Virginia Surety also states that, "to the extent that the ERC Complaint alleges 'property damage' caused by an 'occurrence,' the Policy's intentional acts exclusion excludes coverage." D. Aug. 18, 2008 Br. 9. Because Trammell Crow does not rely on any ERC claims of "property damage" to contend that Virginia Surety has a duty to defend the *ERC Litigation*, the court need not address the intentional acts exclusion.

2004) (per curiam).  Virginia Surety has failed to establish that this exclusion precludes coverage.

Virginia Surety does not cite the specific Policy exclusion that it seeks to invoke.  The only reasonable assumption is that Virginia Surety is referring to the exclusion of coverage for a personal injury "[a]rising out of the willful violation of a penal statute or ordinance."  P. July 28, 2008 App. 56.  Virginia Surety has not established that all of the personal injuries for which ERC is seeking damages necessarily arise from "willful" violations of the FHA or ADA.  Nor has it even attempted to demonstrate that the FHA or ADA is a "penal statute or ordinance" within the meaning of the exclusion.

D

Virginia Surety also contends that the fortuity doctrine bars coverage and, in turn, a duty to defend.

The fortuity doctrine combines the "known loss" and "loss in progress" principles and provides that "insurance coverage is precluded where the insured is, or should be, aware of an ongoing progressive loss or known loss at the time the policy is purchased."  *Sentry Ins. v. DFW Alliance Corp.*, 2007 WL 507047, at *6 (N.D. Tex. Feb. 16, 2007) (Fitzwater, J.) (quoting *Franklin v. Fugro-McClelland (Sw.), Inc.*, 16 F.Supp.2d 732, 734-35 (S.D. Tex. 1997)).  "Texas has long recognized that it is contrary to public policy for an insurance company knowingly to assume a loss

- 17 -

occurring prior to its contract." *Two Pesos, Inc. v. Gulf Ins. Co.*, 901 S.W.2d 495, 501 (Tex. App. 1995, no writ). As the insurer, Virginia Surety bears the burden of establishing that the fortuity doctrine bars coverage. *See Sentry Ins.*, 2007 WL 507047, at \*3. Because Trammell Crow has pointed to the absence of evidence supporting this defense, Virginia Surety is required to adduce specific facts raising a genuine issue as to its application, i.e., evidence that would permit a reasonable jury to find in Virginia Surety's favor. It has not met this burden.

Although Virginia Surety acknowledges that the "eight-corners" rule governs the court's application of the fortuity doctrine, it does not cite to factual allegations in ERC's complaint that would indicate that Trammell Crow knew or should have known of an ongoing loss when it purchased the Policy. Virginia Surety's contention that the fortuity doctrine precludes coverage essentially consists of the following conclusory argument:

> The ERC alleges that Trammell Crow has been violating the ADA and FHA since 1991. Therefore, taking the allegations as true, Trammell Crow has known since 1991 it was constructing apartments in violation of the FHA and ADA . . . .
>
> Because the ERC alleges that Trammell Crow knew it was violating the statutes since 1991, such constitutes a known loss and a loss in progress, thereby precluding coverage and any duty to defend under Virginia Surety's Policy which is for the policy period February 15, 2002 to February 15, 2003.

D. Aug. 18, 2008 Br. 11-12. This argument is logically fallacious.

Virginia Surety assumes that because, as ERC supposedly alleges, Trammell Crow has been violating the FHA and ADA since 1991,[14] Trammell Crow *knew* that it had been doing so since 1991. But that is not what the complaint alleges. Moreover, Trammell Crow's knowledge does not follow inexorably from the allegations of the complaint, because none of the alleged statutory violations requires that Trammell Crow have acted intentionally or that it have knowingly violated the statute. *See* 42 U.S.C. § 3604(f) (applicable provision of the FHA); 42 U.S.C. §§ 12182(a), 12183(a) (applicable provisions of the ADA). Virginia Surety cites no factual allegations in ERC's complaint that would indicate that Trammell Crow knew or should have known it was violating one or both statutes, and the court has found none.

Virginia Surety also focuses on the allegation that Trammell Crow constructed apartments in violation of the FHA and ADA. But it ignores the fact that ERC has alleged that Trammell Crow discriminated, *inter alia*, through its design, control, management, and ownership of the subject properties.

E

To summarize, Virginia Surety has a duty to defend Trammell Crow if ERC's claims against Trammell Crow are potentially covered

_____

[14]Virginia Surety does not cite to evidence of this allegation, and the court cannot find it in ERC's complaint; however, ERC's complaint does allege that Trammell Crow violated the FHA and ADA before the inception of the Policy, which is the essence of Virginia Surety's argument.

by the Policy. *See St. Paul Guardian Ins.*, 283 F.3d at 713. The Policy covers suits seeking damages for "personal injury," including for damages arising out of discrimination because of physical disability that Trammell Crow committed during the policy period and in the coverage territory. Because Trammell Crow has established beyond peradventure that ERC's complaint states claims that potentially fall within the Policy's coverage, and because Virginia Surety has failed to raise a genuine issue of material fact concerning the application of any policy exclusion, Trammell Crow has demonstrated as a matter of law that Virginia Surety has a duty to defend it in the *ERC Litigation*.

IV

Trammell Crow seeks summary judgment on its claim for judgment declaring that Virginia Surety has a continuing duty to defend it in the *ERC Litigation*. Because the court concludes that Virginia Surety has a duty under the Policy to defend the *ERC Litigation*, Trammell Crow is entitled to summary judgment on its claim for a declaratory judgment.[15]

_____

[15]Although the court has in some instances denied declaratory judgment claims as redundant when a party pursuing a breach of contract claim also seeks a declaratory judgment interpreting the contract, *see, e.g., Kougl v. Xspedius Mgmt. Co. of DFW, L.L.C.*, 2005 WL 1421446, at *4 (N.D. Tex. June 1, 2005) (Fitzwater, J.), Trammell Crow's declaratory judgment claim is not duplicative of its breach of contract claim. Trammell Crow seeks a judgment declaring that Virginia Surety has a continuing duty to defend it in the ongoing *ERC Litigation*. This relief is distinct from the relief Trammell Crow seeks in its breach of contract claim, which concerns Virginia Surety's past breach. Thus a declaratory

V

Trammell Crow also seeks summary judgment on its breach of contract claim.

A

To establish a breach of contract under Texas law, Trammell Crow must prove (1) the existence of a valid and enforceable contract, (2) that Trammell Crow performed its duties under the contract, (3) that Virginia Surety breached the contract, and (4) that Trammell Crow suffered damages as a result of the breach. *E.g.*, *Lewis v. Bank of Am. N.A.*, 343 F.3d 540, 544-45 (5th Cir. 2003) (Texas law). The parties do not dispute that the first two elements have been satisfied: they entered into a valid insurance contract, and Trammell Crow performed its duties under the contract. The primary dispute focuses on the third element: whether Virginia Surety breached the insurance contract by failing to defend Trammell Crow in the *ERC Litigation*. The court holds above that Virginia Surety had a duty to defend. Trammell Crow has therefore established beyond peradventure that, because Virginia Surety refused to provide a defense, it breached the Policy.

---

judgment is appropriate under these circumstances. *See Utica Mut. Ins. Co. v. Hickman*, 2000 WL 1593640, at *7 (N.D. Tex. Oct. 24, 2000) (Fitzwater, J.) (entering declaratory judgment that insurer had duty to defend insured in any continuing litigation of covered lawsuit).

The fourth element of the breach of contract claim is that Trammell Crow suffered damages as a result of Virginia Surety's breach of the Policy. Although Trammell Crow does not seek summary judgment on *the amount* of its damages, it must show that it suffered some damages to satisfy this element.

Virginia Surety does not appear to argue that Trammell Crow has suffered no damages at all, but it does object to part of an affidavit that Trammell Crow has provided for the purpose of proving that it sustained damages. The affidavit, from Trammell Crow Risk Management Director Scott Woodward ("Woodward"), states, in relevant part: "Trammell Crow has paid significant defense costs in connection with the [*ERC Litigation*]. Virginia Surety has not paid any amount toward the defense of the [*ERC Litigation*]." P. July 28, 2008 App. 149. Virginia Surety objects that Woodward's sworn statement that Trammell Crow has paid significant defense costs cannot be tested for its veracity as the best evidence of the defense costs. Virginia Surety's apparent invocation of the "best evidence rule" is misplaced, because that rule applies when a party is attempting to prove the content of a writing. *See* Fed. R. Evid. 1002. Trammell Crow is not attempting to prove through Woodward's testimony the content of a specific invoice or other document.

Virginia Surety also objects to Woodward's averment that Virginia Surety has not paid anything toward the defense of the *ERC*

*Litigation*.  It argues that Trammell Crow has laid no foundation for Woodward's competence to testify as to what Virginia Surety has done.  This objection also lacks merit.  Woodward avers that he is the Risk Management Director for Trammell Crow and that he is familiar with the insurance claim that Trammell Crow made against Virginia Surety concerning the *ERC Litigation*.  He is in a positoin to know what Virginia Surety has or has not paid.  And Virginia Surety does not suggest that it has paid any amount toward the defense of the *ERC Litigation*.

The court therefore overrules Virginia Surety's objections concerning the Woodward affidavit, and it concludes that Trammell Crow has shown beyond peradventure that it suffered damages due to Virginia Surety's breach of the Policy.  Accordingly, the court concludes that Virginia Surety is liable for breach of contract and that Trammell Crow is entitled to summary judgment establishing that Virginia Surety is liable for breaching the Policy.

VI

Trammell Crow also asserts that Virginia Surety violated Chapter 542 of the Texas Insurance Code, known as the Prompt Payment of Claims Act.  It maintains that it is entitled to attorney's fees and prejudgment interest under the statute.  It seeks summary judgment on these claims.[16]

_____

[16]Trammell Crow only seeks summary judgment establishing Virginia Surety's liability.  It reserves the right to seek a factual determination as to the damages for a violation of Chapter

Virginia Surety's main argument for why Trammell Crow is not entitled to summary judgment on these claims is that they all depend on Virginia Surety's having a duty to defend the *ERC Litigation*, which Virginia Surety argues it does not have. Because the court has already held that Virginia Surety does have a duty to defend the lawsuit and that it breached this duty, this argument falls away. The court will address Virginia Surety's other arguments for denying summary judgment.

The Prompt Payment of Claims Act prohibits insurers from delaying the payment of first-party claims. *See* Tex. Ins. Code Ann. §§ 542.051–.061 (Vernon 2007). Section 542.058 provides: "Except as otherwise provided, if an insurer, after receiving all items, statements, and forms reasonably requested and required under Section 542.055, delays payment of the claim . . . for more than 60 days, the insurer shall pay damages and other items as provided by Section 542.060." *Id.* The Texas Supreme Court recently held that an insured's right to a defense benefit is a first-party claim, and that the Prompt Payment of Claims Act "may be applied when an insurer wrongfully refuses to promptly pay a defense benefit owed to the insured." *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 20 (Tex. 2007). If an insurer violates the Prompt Payment of Claims Act, it is liable to pay the

542, and the amount of attorney's fees and prejudgment interest to which it contends it is entitled.

insured, "in addition to the amount of the claim, interest on the amount of the claim at the rate of 18 percent a year as damages, together with reasonable attorney's fees."  Tex. Ins. Code Ann. § 542.060 (Vernon 2007).

Trammell Crow contends that it is entitled to summary judgment on its Chapter 542 claims because Virginia Surety wrongfully refused to pay Trammell Crow's defense costs in the *ERC Litigation*. Trammell Crow notified Virginia Surety of the *ERC Litigation* on November 13, 2007, and Virginia Surety denied its duty to provide a defense to the lawsuit on December 26, 2007.  Trammell Crow maintains that, since that time, it has paid significant defense costs relating to the *ERC Litigation*, and Virginia Surety has not paid any amount toward a defense.  Trammell Crow argues that, because Virginia Surety has delayed for more than 60 days in providing Trammell Crow its defense benefit, Virginia Surety has violated the Prompt Payment of Claims Act as a matter of law.

Virginia Surety argues that it is not liable for damages under the Prompt Payment of Claims Act because Trammell Crow has not submitted to Virginia Surety any legal bills or invoices for expenses incurred in defending the *ERC Litigation*.  It contends that there can be no damages under the Act "unless the insured retains counsel in the underlying lawsuit, begins receiving statements for legal services, and such statements are submitted to the insurer." D. Aug. 18, 2008 Br. 13 (citing *Lamar Homes*, 242 S.W.3d at 19; Tex.

Ins. Code § 542.056(a)). It posits that "[t]he legal fee statements or invoices are necessary last pieces of information needed to put a value on the insured's loss." *Id*. Although the court agrees that proof of the insured's defense costs are necessary to calculate the damages for which the insurer is liable, it disagrees with the premise that an insurer cannot be liable under the Prompt Payment of Claims Act unless the insured has submitted statements of its defense costs to the insurer.

*Lamar Homes* holds that an insured's right to a defense benefit is a first-party claim, and the insurer's denial of the defense benefit falls under the Texas Prompt Payment of Claims Act. *Lamar Homes*, 242 S.W.3d at 20. *Lamar Homes* rejects the holding of *TIG Insurance Co. v. Dallas Basketball, Ltd.*, 129 S.W.3d 232 (Tex. App. 2004, pet. denied), in which the court of appeals held that an insured's claim for a defense does not fall under the Texas Prompt Payment of Claims Act. In *TIG Insurance* the court observed that the statute was "unworkable" in the context of defense claims, because at the time of the claim, the insured has not suffered any actual loss. *See TIG Ins.*, 129 S.W.3d at 239-40; *Lamar Homes*, 242 S.W.3d at 19 (discussing *TIG Ins.*). The Texas Supreme Court adopted the opposite position in *Lamar Homes*, concluding that, "when the insurer wrongfully rejects its defense obligation, the insured has suffered an actual loss that is quantified after the insured retains counsel and begins receiving statements for legal services." *Lamar Homes*,

242 S.W.3d at 19. The court then explained:

> These statements or invoices are the last piece
> of information needed to put a value on the
> insured's loss. And when the insurer, who owes
> a defense to its insured, fails to pay within
> the statutory deadline, the insured matures its
> right to reasonable attorney's fees and the
> eighteen percent interest rate specified by the
> statute.

*Id.* (internal citations omitted).

In its brief, Virginia Surety seriously misquotes the second sentence of this passage. *See* D. Aug. 18, 2008 Br. 13. According to the brief, the opinion states as follows (words added by Virginia Surety are underlined; words deleted by Virginia Surety from the *Lamar Homes* opinion are bracketed):

> "<u>Only</u> [And] when <u>an</u> [the] insurer, who owes a
> defense to its insured, fails to pay <u>the
> submitted defense costs</u> within the statutory
> deadline <u>of the Texas Insurance Code</u>, the
> insured matures its right to reasonable
> attorney's fees and the eighteen percent
> interest rate specified by the statute."

*Id.* (purporting to quote *Lamar Homes*, 242 S.W.3d at 19, and citing Tex. Ins. Code Ann. § 542.060). But this sentence *does not* contain the word "only," and it *does not* refer to "the submitted defense costs." Adding these words to the quotation without acknowledging the alteration improperly changes the meaning of this passage and is seriously misleading.

Virginia Surety maintains that this passage (presumably as correctly stated) means that the insurer cannot be liable under the statute until it receives invoices for defense costs. The court

disagrees. Under Virginia Surety's interpretation, an insurer who wrongfully denies an insured's claim for defense costs would not be liable unless the insured submits invoices for defense costs that the insurer has already refused to pay. This interpretation is counter to *Lamar Homes's* reasoning that the insured suffers an actual loss when the insurer rejects its defense obligation.

The court concludes that *Lamar Homes* is best understood as holding that an insurer becomes liable under the statute when it wrongfully rejects its defense obligation, but that attorney's fees cannot be awarded, and prejudgment interest does not begin accruing, until the insured actually incurs the defense costs. To calculate these damages, the insured must provide evidence of the dates and amounts of its defense costs.[17] In other words, there can be a determination of liability without a calculation of damages. This is consistent with *Lamar Homes's* holding and the Prompt Payment of Claims Act.[18]

---

[17]This is consistent with *Primrose Operating Co. v. National American Insurance Co.*, 382 F.3d 546 (5th Cir. 2004), which *Lamar Homes* cites favorably. *See Lamar Homes*, 242 S.W.3d at 19. *Primrose* held: "the prejudgment interest should be assessed against [the insurer] based on the dates Plaintiffs paid each bill for attorney's fees rather than the date [the insurer] refused to defend Plaintiffs." *Primrose*, 382 F.3d at 565.

[18]Although Virginia Surety does not explain this assertion, it also cites § 542.056(a) of the Prompt Payment of Claims Act for the proposition that it cannot be liable if it has not received invoices for Trammell Crow's defense costs. Section 542.056(a), however, does not support this argument. It provides that "an insurer shall notify a claimant in writing of the acceptance or rejection of a claim not later than the 15th business day after the

Because Trammell Crow has not sought summary judgment as to the amount of damages, attorney's fees, and prejudgment interest it is entitled to, but has reserved the right to seek a factual determination as to these amounts, it need not provide evidence of its specific defense costs at this time.

The court concludes that Trammell Crow has established beyond peradventure that Virginia Surety violated the Prompt Payment of Claims Act, and that Trammell Crow is therefore entitled to summary judgment on this claim.  It follows that Trammell Crow is also entitled to summary judgment on its claims for attorney's fees and prejudgment interest under the statute.  *See* Tex. Ins. Code Ann. § 542.060.  The specific amount of damages, attorney's fees, and prejudgment interest to which Trammell Crow is entitled remain  to be determined at trial.

VII

Virginia Surety moves for summary judgment on Trammell Crow's claims under Chapter 541 of the Texas Insurance Code.[19]

---

date the insurer receives all items, statements, and forms required by the insurer to secure final proof of loss." Tex. Ins. Code Ann. § 542.056(a).  Although an insurer is not required to accept or reject a claim before it receives the items needed to secure a final proof of loss, if it does reject a claim before it receives these items, there is nothing in § 542.056(a) that excuses the insurer from liability on this basis.

[19]Trammell Crow has not moved for summary judgment on its Chapter 541 claims, but reserves the right to a factual determination as to both its damages and Virginia Surety's liability under the statute.

Trammell Crow alleges that Virginia Surety violated Chapter 541 by (1) misrepresenting to Trammell Crow material facts and Policy provisions relating to Virginia Surety's duty to defend, (2) failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of Trammell Crow's claim when Virginia Surety's liability for the claim had become reasonably clear, (3) failing to promptly provide Trammell Crow with a reasonable explanation for denying its defense claim, and (4) refusing to defend Trammell Crow without conducting a reasonable investigation of the defense claim. *See* Tex. Ins. Code Ann. § 541.060(a)(1)-(3), (7) (Vernon 2007). Virginia Surety's principal, if not its only, argument is that an insured has no claim for bad faith under Chapter 541 when an insurer has denied a claim that is not covered under the Policy. The court has held, however, that Trammell Crow's claim for a defense is covered under the Policy, thus summary judgment should not be granted on this basis. To the extent Virginia Surety contends that it is entitled to summary judgment on another basis, it has not done so with sufficient clarity, and it would be error to grant summary judgment dismissing Trammell Crow's Chapter 541 claims. *See, e.g., John Deere Co. v. Am. Nat'l Bank, Stafford*, 809 F.2d 1190, 1192 (5th Cir. 1987) (holding that it is error to grant summary judgment on ground not raised).

Accordingly, Virginia Surety is not entitled to summary judgment dismissing Trammell Crow's Chapter 541 claims.

## VIII

Virginia Surety moves for severance and abatement, contending that Trammell Crow's breach of contract and declaratory judgment claims, which rest solely on the determination of whether Virginia Surety has a duty to defend the *ERC Litigation*, should be severed from its extracontractual claims under the Texas Insurance Code, and that discovery on the extracontractual claims should be abated. Virginia Surety's arguments rest on the assertion that litigating the duty to defend issue simultaneously with the extracontractual claims would waste resources and prejudice Virginia Surety. Because the court concludes as a matter of law that Virginia Surety has a duty to defend and is liable under the breach of contract and declaratory judgment claims, these arguments are moot. Therefore, Virginia Surety's motion for severance and abatement is denied.

## IX

Virginia Surety moves for leave to respond to Trammell Crow's surreply filed in connection with Virginia Surety's summary judgment motion. Virginia Surety seeks to address arguments raised in its reply brief, to which the court allowed Trammell Crow to respond to in a surreply. Considering the grounds and reasoning for the court's decision today, there is no need for further briefing. Allowing another brief would needlessly delay the resolution of these motions. Accordingly, the court denies Virginia Surety's motion.

\*        \*        \*

The court grants Trammell Crow's July 28, 2008 motion for partial summary judgment and denies Virginia Surety's August 14, 2008 motion for final summary judgment. The court also denies as moot (1) Virginia Surety's July 25, 2008 motion for severance and abatement, (2) Virginia Surety's September 24, 2008 motion for leave to file supplemental evidence in support of its motion for final summary judgment, and (3) Virginia Surety's October 16, 2008 motion for leave to respond to plaintiff's surreply to defendant's reply to plaintiff's response in opposition to defendant Virginia Surety's motion for final summary judgment.

Pursuant to Fed. R. Civ. P. 54(b), the court enters a final judgment declaring that Virginia Surety has a duty to defend Trammell Crow in the *ERC Litigation*.

**SO ORDERED.**

December 1, 2008.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE